# SUPREME COURT OF ARKANSAS
No. 10-1250

| | |
|---|---|
| MARK AND KARLA GIBBS<br>PETITIONERS | Opinion Delivered June 16, 2011 |
| VS. | |
| PRIMELENDING, A PLAINS CAPITAL COMPANY, ET AL<br>RESPONDENTS | CERTIFIED QUESTION ANSWERED. |

**JIM HANNAH, Chief Justice**

This case involves a question of law certified to this court by the United States District Court for the Eastern District of Arkansas in accordance with Arkansas Supreme Court Rule 6-8 (2010) and accepted by this court on December 16, 2010. *See Gibbs v. Primelending*, 2010 Ark. 503. The question certified is "[w]hether the use of the conspiracy theory of in personam jurisdiction violates Arkansas Code Annotated section 16-4-101." We answer in the negative.

The following facts were provided in the federal district court's certification order. In January 2009, Morgan Stanley contacted Plaintiffs, Mark and Karla Gibbs, with an offer to refinance their home. At the time of the offer, Morgan Stanley was the financial advisor for Plaintiffs, and C. Ryan Hill, vice president of Morgan Stanley, was their personal financial advisor. Plaintiffs agreed to refinance their home with Morgan Stanley, but they were redirected by Hill to PrimeLending. Jeffrey Brown, a PrimeLending employee, assisted Plaintiffs in their refinancing.

At the same time as Plaintiffs' refinancing, Defendants Shelley Hickson and Amy Christine Tueckes were employed by LandAmerica and Commonwealth to solicit title-insurance business from PrimeLending. When LandAmerica and Commonwealth were unable to handle the title business flowing from PrimeLending, Hickson and Tueckes referred this overflow title business to eLender Services which always chose eLender Escrow as the escrow agent.

ELender Services or eLender Escrow would pay a kickback fee from this overflow business to a limited liability company formed, and owned, by Hickson and Tueckes. Hickson and Tueckes would, in turn, pay part of this fee to PrimeLending or its employees for being the source that originally contacted Hickson or Tueckes.

PrimeLending began Plaintiffs' refinancing process by contacting Hickson or Tueckes. Hickson or Tueckes referred them to eLender Services which used eLender Escrow as the escrow agent even though the State of California had previously revoked the authority of eLender Escrow to act as an escrow agent because it failed to properly file its financial statements.

To compensate for the lost license, Corinthian Title, Mark Russell, Russell Biszantz, eLender Services, and eLender Escrow developed a scheme that enabled eLender Escrow to continue to operate. In furtherance of this scheme, Corinthian Title conspired with eLender Services and eLender Escrow to allow Bryan Kelly, a Corinthian Title employee, to work on the premises of eLender Services and eLender Escrow. By allowing Kelly to work out of its offices, eLender Escrow could continue to state that it was a licensed escrow agent. Corinthian

Title received some form of benefit from eLender Services or eLender Escrow in return for its participation in the scheme. Because of this scheme, eLender Escrow ultimately was able to serve as Plaintiffs' escrow agent.

On July 22, 2009, PrimeLending through its agent Brown mailed the "Mortgage Loan Origination Agreement" to Plaintiffs for execution. PrimeLending charged Plaintiffs $15,095 in fees. PrimeLending contacted Plaintiffs by telephone to set a closing location. Howard Wayne Narts, a notary public, handled the closing on August 11, 2009, at the Pulaski County business offices of Plaintiff Mark Gibbs. At closing, Plaintiffs executed a promissory note payable to US Bank for $1.2 million and a mortgage in favor of US Bank to secure the note. Funds from this loan and from Plaintiffs' private accounts were transferred to eLender Services' bank account to be used by eLender Escrow to pay this Morgan Stanley note and release the Morgan Stanley mortgage. Unfortunately, the Morgan Stanley note was not paid and it was discovered that Biszantz, owner of eLender Escrow, had taken for his own use the money intended to pay off the note. As a result, Plaintiffs now have two mortgages encumbering their home and a total indebtedness of $2,702,089.17.

Plaintiffs brought claims in the federal district court against (1) PrimeLending, Corinthian Title, Brown, Hickson, and Tueckes for violations of 12 U.S.C. § 2607(a); (2) PrimeLending and Corinthian Title for fraud; (3) PrimeLending, Corinthian Title, Brown, Hickson, and Tueckes for negligence; (4) PrimeLending and Corinthian Title for negligent training, retention, and supervision; (5) PrimeLending, Corinthian Title, Brown, Hickson, and Tueckes for civil conspiracy; (6) PrimeLending, Corinthian Title, Brown, Hickson, and

Tueckes for acting in concert; and (7) PrimeLending for breach of fiduciary duty. Corinthian Title, Brown, Hickson, and Tueckes contended that the federal district court did not have in personam jurisdiction over them because Arkansas's long-arm statute does not allow application of conspiracy jurisdiction. Thereafter, the federal district court certified to this court the question of whether the use of the conspiracy theory of in personam jurisdiction violates Arkansas Code Annotated section 16-4-101.

In *Cawley v. Bloch*, 544 F. Supp. 133 (D. Md. 1982), the United States District Court for the District of Maryland articulated the conspiracy theory of jurisdiction as follows:

> [W]hen
>
> (1) two or more individuals conspire to do something
>
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
>
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and
>
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Id.* at 135.

In their briefs before this court, Corinthian Title, Brown, Hickson, and Tueckes contend that Arkansas does not recognize the conspiracy theory of jurisdiction because the application of the theory violates due process.[1] They further contend that the conspiracy

---

[1] While some courts have rejected the conspiracy theory of jurisdiction, concluding that it is inconsistent with due process, *see, e.g., Brown v. Kerkhoff*, 504 F. Supp. 2d 464 (S.D. Iowa 2007); *Paolino v. Argyll Equities, L.L.C.*, 401 F. Supp. 2d 712 (W.D. Tex.

theory of jurisdiction is inapplicable in Arkansas because it is inconsistent with the plain language of our long-arm statute.

Arkansas's long-arm statute provides that

> [t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

---

2005); *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262 (W.D. Wash. 2005); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 307 F. Supp. 2d 145 (D. Me. 2004); *Steinke v. Safeco Ins. Co. of Am.*, 270 F. Supp. 2d 1196 (D. Mont. 2003); *Insolia v. Philip Morris, Inc.*, 31 F. Supp. 2d 660 (W.D. Wis. 1998); *Karsten Mfg. Corp. v. U.S. Golf Ass'n*, 728 F. Supp. 1429 (D. Ariz. 1990); *Kipperman v. McCone*, 422 F. Supp. 860 (N.D. Cal. 1976); *Mansour v. Super. Ct. of Orange County*, 46 Cal. Rptr. 2d 191 (Cal. Ct. App. 1995); *Ashby v. State*, 779 N.W.2d 343 (Neb. 2010); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex. 1995); *Hewitt v. Hewitt*, 896 P.2d 1312 (Wash. Ct. App. 1995), many courts have adopted some variant of the theory, see, e.g., *Textor v. Bd. of Regents*, 711 F.2d 1387 (7th Cir.1983); *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592 (E.D. Ky. 2006); *Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080 (N.D. Iowa 2005); *In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15 (D.D.C. 2003); *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690 (N.D. Ill. 2002); *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95 (E.D.N.Y. 2000); *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656 (E.D. Mich. 1996); *In re N. Dakota Personal Injury Asbestos Litig. No. 1*, 737 F. Supp. 1087 (D. N.D. 1990); *Cawley v. Bloch*, 544 F. Supp. 133 (D. Md. 1982); *Vermont Castings, Inc. v. Evans Prods. Co.*, 510 F. Supp. 940 (D. Vt. 1981); *Dixon v. Mack*, 507 F. Supp. 345 (S.D.N.Y. 1980); *Gemini Enters., Inc. v. WFMY Television Corp.*, 470 F. Supp. 559 (M.D. N.C.1979); *Prof'l Investors Life Ins. Co. v. Roussel*, 445 F. Supp. 687 (D. Kan. 1978); *McLaughlin v. Copeland*, 435 F. Supp. 513 (D. Md.1977); *Ex parte United Ins. Cos., Inc.*, 936 So. 2d 1049 (Ala. 2006); *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210 (Del. 1982); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582 (Fla. 2000); *Rudo v. Stubbs*, 472 S.E.2d 515 (Ga. Ct. App. 1996); *Cameron v. Owens-Corning Fiberglas Corp.*, 695 N.E.2d 572 (Ill. App. Ct. 1998); *Merriman v. Crompton Corp.*, 146 P.3d 162 (Kan. 2006); *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479 (Md. 2006); *Hunt v. Nevada State Bank*, 172 N.W.2d 292 (Minn. 1969); *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221 (N.M. Ct. App. 2001); *Reeves v. Phillips*, 388 N.Y.S.2d 294 (N.Y. App. Div. 1976); *Hammond v. Butler, Means, Evins & Brown*, 388 S.E.2d 796 (S.C. 1990); *Chenault v. Walker*, 36 S.W.3d 45 (Tenn. 2001).

Ark. Code Ann. § 16-4-101(B) (Repl. 2010).

Unlike some long-arm statutes, and unlike previous versions of Arkansas's long-arm statute, the current statute does not limit the exercise of personal jurisdiction to certain enumerated circumstances. Rather, the exercise of personal jurisdiction is limited only by federal constitutional law. Accordingly, "[t]his court now looks only to Fourteenth Amendment due process jurisprudence when deciding an issue of jurisdiction." *Davis v. St. Johns Health Sys., Inc.*, 348 Ark. 17, 23, 71 S.W.3d 55, 58 (2002). The resolution of the certified question, then, depends on whether the conspiracy theory of jurisdiction comports with due process.

Due process requires that a nonresident defendant may be subject to personal jurisdiction only if he or she has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Myer*, 311 U.S. 457, 463 (1940)). Attention must be paid to the "quality and nature" of those contacts and also to whether that defendant through those contacts enjoyed the "benefits and protection" of the laws of the forum state. *Id.* at 319.

A nonresident defendant's contacts with a forum state must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

After reviewing these constitutional principles, we find nothing that prohibits the use of the conspiracy theory of jurisdiction. This court has noted that any act done or declaration made by one of the conspirators in furtherance, aid, or preparation of the alleged conspiracy may be shown as evidence against his or her fellow conspirators. *Mason v. Funderburk*, 247 Ark. 521, 529, 446 S.W.2d 543, 548 (1969). We cite to *Mason* not to conflate the concepts of liability and personal jurisdiction but to point out that "the conspiracy theory follows plainly from the very definition of conspiracy and the meaning of co-conspirator liability. . . If due process does not prevent that co-conspirator from being held civilly or criminally responsible based on the principle of imputed conduct, it is difficult to see why it should prevent the exercise of jurisdiction based on that same principle." *Chenault v. Walker*, 36 S.W.3d 45, 53-54 (Tenn. 2001); *see also Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992) ("If through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction."); *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 492 (Md. 2006) (noting the "asymmetry that would result if co-conspirators are permitted to enjoy the benefits and protections of the law of a forum, but are not subject to the personal jurisdiction of the forum" (citing *Hunt v. Nevada State Bank*, 172 N.W.2d 292, 312 (Minn. 1969)). As noted by the Delaware Supreme Court, "a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state,

thereby fairly invoking the benefits and burdens of its laws." *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).

We conclude that jurisdiction based on the conspiracy theory does not violate due process. As such, the use of the conspiracy theory of in personam jurisdiction does not violate Arkansas Code Annotated section 16-4-101.

Certified question answered.

# MANDATE

## CERTIFIED QUESTION ANSWERED

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 4 2011

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

STATE OF ARKANSAS
In the Supreme Court

Proceedings of June 16, 2011

10-1250
MARK and KARLA GIBBS          PETITIONERS
v. An Original Action
    (No. 4:10-CV-293 JMM)
PRIMELENDING, A PLAINS
CAPITAL COMPANY ET AL.          RESPONDENTS

      This certified question of law was submitted to the Arkansas Supreme Court as an original action petition from the United States District Court for the Eastern District of Arkansas, and on briefs of the respective parties. After due consideration, it is the decision of the Court that the certified question is answered for the reasons set out in the attached opinion.

                        IN TESTIMONY, that the above is a true copy of the judgment of the Arkansas Supreme Court. I, Leslie W. Steen, Clerk, set my hand and affix the seal this 27th day of July, A.D. 2011.

_____
                                   Clerk